# EXHIBIT 1

# CHAPTER 820

# Fair Housing


820.01 Purpose.

820.02 Definitions.

820.03 Exemptions.

820.04 Prohibited acts.

820.05 Posting of notices.

820.06 Fair Housing Review Commission.

820.07 Administration.

820.08 Complaints.

820.09 Notice.

820.10 Investigation.

820.11 Conciliation.

820.12 Injunctive relief.

820.13 Hearings.

820.14 Hearing decisions.

820.15 Remedial actions.

820.16 Judicial relief.

820.17 Additional remedies.


***CROSS REFERENCES***

Fair Housing Act - see Ohio R.C. 4112.01 et seq.

## 820.01 PURPOSE.

It is hereby declared to be the purpose of this chapter to provide, within constitutional limitations, for fair housing throughout the City, to assure that all persons have full and equal opportunity to consider all available housing for themselves and their families within the City without being discriminated against on the basis of race, color, religion, sex, sexual orientation, gender identity, age, ancestry, disability, familial status, national origin, military status, association with a protected class or source of income, and to promote a stable, racially integrated community.

(1982 Code, § 743.01) (Ord. 97-07. Passed 2-3-1997; Ord. 2003-34. Passed 9-15-2003; Ord. 2012-11. Passed 4-2-2012; Ord. 2019-16. Passed 4-15-2019.)

## 820.02 DEFINITIONS.

Words and phrases used in this chapter shall have the meanings given herein unless the context clearly indicates otherwise:

(a) "Association with a protected class" means people associated with or residing with a person in a protected class.

(b) "Commission" means the Fair Housing Review Commission.

(c) "Covered multi-family dwellings" means buildings built for first occupancy after March 13, 1991 consisting of four or more units if such buildings have one or more elevators, and ground floor units in other buildings consisting of four or more units.

(d) "Disability" means, with respect to a person: (1) a physical or mental impairment which substantially limits one or more of such person's major life activities; (2) a record of having such an impairment; or (3) being regarded as having such an impairment, but such term does not include current, illegal use of or addiction to a controlled substance as defined in 21 U.S.C. Section 802.

(e) "Discriminate" or "discrimination" means to separate or segregate persons in a particular manner solely or in part because of race, color, religion, sex, sexual orientation, gender identity, age, ancestry, disability, familial status, national origin, military status, association with a protected class or source of income; provided that "discriminate" or "discrimination" shall not include special outreach efforts conducted by or under the authority of units of local government (including agencies, departments and commissions thereof) or non-profit fair housing corporations or agencies to ensure that persons of minority groups are fully informed of, and have access to, available dwelling opportunities in areas of present or

**EXHIBIT B**

prospective majority group concentration, or to ensure that persons of majority groups are fully informed of and have access to available dwelling opportunities in areas of present or prospective minority group concentration.

(f) "Dwelling" means a building or structure, or part thereof, used or designed or intended to be used for residential purposes.

(g) "Familial status" means one or more individuals (who have not attained the age of 18 years) being domiciled with: (1) a parent or another person having legal custody of such individual or individuals; or (2) the designee of such parent or other person having such custody, with the written permission of such parent or their person; and shall apply to any person who is pregnant or is in the process of securing legal custody of any individual who has not attained the age of 18 years.

(h) "Housing for older persons" means housing: (1) provided under any state or Federal program that the Secretary of HUD determines is specifically designed and operated to assist elderly persons (as defined in the state or Federal program); or (2) intended for persons 62 years of age or older; or (3) intended and operated for occupancy by at least one person 55 years or older per unit. The determination as to whether housing qualifies as housing for older persons under this division shall be consistent with regulations promulgated by the Secretary of HUD, providing at least the following factors: (1) that at least 80% of the units are occupied by at least one person 55 years of age or older per unit; and (2) the procedures which demonstrate an intent by the owner or manager to provide housing for persons 55 years of age or older. Housing shall not fail to meet the requirements for housing for older persons by reason of (1) persons residing in such housing as of the date of enactment of the Fair Housing Act of 1988 who do not meet the age requirements of this division; provided that the new occupants of such housing meet such age requirements; or (2) unoccupied units; provided that such units are reserved for occupancy by persons who meet the age requirements of this division.

(i) "Lending institution" means any bank, savings and loan association, insurance company, or other organization or person regularly engaged in the business of lending money, guaranteeing loans for profit, or otherwise providing financial assistance or insurance in connection with the purchase, sale or rental of dwellings.

(j) "Person" means one or more individuals, corporations, partnerships, associations, labor organizations, legal representatives, mutual companies, joint stock companies, trusts, unincorporated organizations, trustees, trustees in bankruptcy, receivers or fiduciaries.

(k) "Purchase" means to acquire a dwelling by payment or promise of payment of money or its equivalent.

(l) "Real estate agent" means a real estate broker or salesman, or a limited real estate broker or salesman, as defined in R.C. § 4735.01.

(m) "Rent" or "rental" means to lease, sublease, assign or otherwise grant or obtain the right to occupy a dwelling not owned by the occupant in return for consideration, or a contract or option to do any of the foregoing.

(n) "Sale" or "sell" means to convey, exchange, transfer or assign legal or equitable title to, or beneficial interest in, a dwelling in return for consideration, or a contract or option to do any of the foregoing.

(o) "Solicit" or "solicitation" means any conduct by a real estate agent, or an employee or agent thereof, intended to induce the owner of a dwelling within the City to sell, rent, or list the same for sale or rental.

(p) "Source of income" means lawful income derived from wages, social security, supplemental security income, all forms of Federal, state or local assistance payments or subsidies, child support, spousal support, and public assistance which can be verified and substantiated.

(q) "Unlawful discriminatory practice" means any act prohibited by Section820.04 .

(1982 Code, § 743.02) (Ord. 97-07. Passed 2-3-1997; Ord. 2003-34. Passed 9-15-2003; Ord. 2012-11. Passed 4-2-2012; Ord. 2019-16. Passed 4-15-2019.)

### 820.03 EXEMPTIONS.

The provisions of this chapter shall not:

(a) Prohibit a religious organization, association, or society, or any nonprofit institution or organization operated, supervised or controlled by or in conjunction with a religious organization, association, or society, from limiting the sale, rental or occupancy of dwellings which it owns or operates for other than a commercial purpose to persons of the same religion, or from giving preference to such persons, unless membership in such religion is restricted on account of race, color, or national origin. Nor shall anything in this chapter prohibit a private club not in fact open to the public, which as an incident to its primary purpose or purposes provides lodgings which it owns or operates for other than a commercial purpose, from limiting the rental or occupancy of such lodgings to its members or from giving preference to its members, provided such club does not discriminate in its membership policies on the basis of race, color, religion, sex, sexual orientation, gender identity, age, ancestry, disability familial status, national origin, military status, association with a protected class or source of income.

(b) Require any person selling or renting property to modify such property in any way at his or her expense, provided that such person does not refuse to permit reasonable modifications by a person with a disability, necessary for that person to fully enjoy the premises in which he or she resides, when such modifications are made at the expense of the person with a disability, which permission may be conditioned on that person's promise to restore the premises to the condition in which it previously existed before granting permission for such modification if it is reasonable to do so, nor shall this chapter be

construed to relieve any person with a disability of any obligation generally imposed on all persons regardless of disability in a written lease, rental agreement, or contract of purchase or sale, or to forbid distinctions based on the inability to fulfill the terms and conditions, including financial obligations, of the lease, agreement, or contract, so long as such distinctions are not based on the disability itself, or on the landlord's refusal to make reasonable modification in the lease, agreement or contract conditions for the purpose of denying a person with a disability equal opportunity to the use and enjoyment of the premises.

(c) Prohibit restricting the sale or rental of a dwelling on the basis of disability when such a dwelling is authorized, approved, financed, or subsidized in whole or in part for the benefit of persons of a disability by a unit of state, local, or Federal government, so long as such restrictions do not discriminate against otherwise qualified persons with disabilities.

(d) Require that a dwelling be made available to a person with a disability whose tenancy would constitute a direct threat to the health or safety of other individuals or whose tenancy would result in substantial physical damage to the property of others.

(e) Prohibit the applicability of any reasonable local, state or Federal restrictions regarding the maximum number of occupants permitted to occupy a dwelling.

(f) With regard to familial status, apply to dwellings provided under any state or Federal program specifically designed and operated to assist elderly persons, as defined in the state or Federal program, or to housing for older persons, provided that HUD has determined that such program or housing is exempt, which determination shall be conclusive.

(g) Prohibit a person engaged in the business of furnishing appraisals of real property to take into consideration factors other than race, color, religion, sex, age, sexual orientation, gender identity, disability, familial status, national origin, military status, association with a protected class or source of income.

(h) Prohibit conduct against a person because such person has been convicted by any court of competent jurisdiction of the illegal manufacture or distribution of a controlled substance as defined in 21 U.S.C. Section 802.

(1982 Code, § 743.03) (Ord. 97-07. Passed 2-3-1997; Ord. 2003-34. Passed 9-15-2003; Ord. 2012-11. Passed 4-2-2012; Ord. 2019-16. Passed 4-15-2019.)

### 820.04 PROHIBITED ACTS.

It is hereby declared to be a discriminatory housing practice and unlawful for any person to:

(a) Refuse to sell, transfer, assign, rent, lease, sublease, finance, negotiate or otherwise deny or make unavailable a dwelling to any person because of race, color, religion, sex, sexual orientation, gender identity, age, ancestry, disability, familial status, national origin, military status, association with a protected class or source of income of any present or prospective owner, occupant, or user of such dwelling;

(b) Represent to any person, because of race, color, religion, sex, sexual orientation, gender identity, age, ancestry, disability, familial status, national origin, military status, association with a protected class or source of income, that a dwelling is not available for sale, rental, or inspection when in fact it is available;

(c) Refuse to lend money or to provide other financial assistance, whether or not secured by mortgage or otherwise, for the acquisition, construction, rehabilitation, repair, or maintenance of a dwelling or otherwise withhold financing of a dwelling from any person because of race, color, religion, sex, sexual orientation, gender identity, age, ancestry, disability, familial status, national origin, military status, association with a protected class or source of income of any present or dwelling, provided such person lends money as one of the principal aspects or incident to his or her principal business and not only as a part of the purchase price of an owner-occupied residence he or she is selling not merely casually or occasionally to a relative or friend;

(d) Discriminate against any person in the terms or conditions of selling, transferring, assigning, brokering, renting, leasing, or subleasing any dwelling or in furnishing facilities, services, or privileges in connection with the ownership, occupancy, or use of any dwelling, including the sale of fire, extended coverage or homeowners insurance, because of the race, color, religion, sex, sexual orientation, gender identity, age, ancestry, disability, familial status, national origin, military status, association with a protected class or source of income of any present or prospective owner, occupant, or user of such dwelling, or because of the racial composition of the neighborhood in which the dwelling is located;

(e) Discriminate against any person in the terms or conditions of any loan of money, purchase of loans, or in providing other financial assistance, whether or not secured by mortgage or otherwise, for the acquisition, construction, rehabilitation, repair or maintenance of a dwelling because of the race, color, religion, sex, sexual orientation, gender identity, age, ancestry, disability, familial status, national origin, military status, association with a protected class or source of income of any present or prospective owner, occupant, or user of such dwelling, or because of the racial composition of the neighborhood in which the dwelling is located;

(f) Refuse to consider without prejudice the purpose of extending mortgage credit to a married couple or either member thereof;

(g) Print, publish, or circulate any statement or advertisement, or make any verbal statement, relating to the sale, transfer, assignment, rental, lease, sublease, or acquisition of any dwelling or the loan of money, whether or not secured by mortgage or otherwise, for the acquisition, construction, rehabilitation, repair, or maintenance of a dwelling which indicates any preference, limitation, specification, or discrimination based upon race, color, religion, sex, sexual orientation, gender

identity, age, ancestry, disability, familial status, national origin, military status, association with a protected class or source of income, or an intention to make any such preference, limitation, specification, or discrimination;

(h) Include in any transfer, rental, or lease of a dwelling any restrictive covenant based on race, color, religion, sex, sexual orientation, gender identity, age, ancestry, disability, familial status, national origin, military status, association with a protected class or source of income, or honor or exercise, or attempt to honor or exercise, any such restrictive covenant, provided that the prior inclusion of such a restrictive covenant in the chain of title shall not be deemed a violation of this provision;

(i) Induce or solicit or attempt to induce or solicit a dwelling listing, sale, or transaction by representing that a change has occurred or may occur with respect to racial, religious, sexual or ethnic composition of the block, neighborhood, or area in which the dwelling is located, or induced or solicited or attempt to induce or solicit such sale or listing by representing that the presence or anticipated presence of persons of any race, color, religion, sex, sexual orientation, gender identity, age, ancestry, disability, familial status, national origin, military status, association with a protected class or source of income, in the area will or may have results such as the following:

(1) The lowering of property values;

(2) A change in the racial, religious, sexual, or ethnic composition of the block, neighborhood, or area in which the dwelling is located;

(3) An increase in criminal or antisocial behavior in the area;

(4) A decline in the quality of the schools serving the area.

(j) Deny any person access to or membership or participation in any multiple-listing service, real estate agents' association, or other service, association, or facility relating to the business of selling or renting housing accommodations, or to discriminate against any person in the terms or conditions of such access, membership, or participation, on account of race, color, religion, sex, sexual orientation, gender identity, age, ancestry, disability, familial status, national origin, military status, association with a protected class or source of income;

(k) Coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of, or on account of that person's having exercised or enjoyed or having aided or encouraged any other person in the exercise or enjoyment of, any right granted or protected by this section;

(l) Discourage or attempt to discourage the purchase by a prospective purchaser of a dwelling, by representing that any block, neighborhood, or area has undergone or might undergo a change with respect to the religious, racial, sexual, familial status or ethnic composition of the block, neighborhood, or area;

(m) Discriminate against any person because of race, color, religion, sex, sexual orientation, gender identity, age, ancestry, disability, familial status, national origin, military status, association with a protected class or source of income, in appraising the value of any dwelling in connection with the sale, brokering, or rental of such dwelling;

(n) Refuse to permit, at the expense of a person with a disability, reasonable modifications of existing premises occupied or to be occupied by such person if such modifications may be necessary to afford such person full enjoyment of the premises, except that, in the case of a rental, no modification need be permitted unless the renter first agrees to restore the interior of the premises to the condition that existed before the modification, reasonable wear and tear excepted unless previously negotiated with the landlord, if it is reasonable for the landlord to condition permission for the proposed modification upon the agreement;

(o) Refuse to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford a person with a disability equal opportunity to use and enjoy a dwelling;

(p) Construct covered multi-family dwellings that do not provide for accessibility and usability for persons with physical disabilities in compliance with applicable state or Federal law, whichever is controlling;

(q) Discriminate in any manner against any other person because that person has opposed any unlawful practice defined in this chapter, or because that person has made a charge, testified, assisted, or participated in any manner in any investigation, proceeding, or hearing as provided pursuant to this chapter;

(r) Aid, abet, incite, compel, or coerce the doing of any act declared by this chapter to be an unlawfully discriminatory practice, or to obstruct or prevent any person from complying with the provisions of this chapter, or any order issued pursuant thereto, or to attempt directly or indirectly to commit any act declared by this chapter to be an unlawful discriminatory practice;

(s) Except as otherwise provided in division (s) or (u) of this section, make any inquiry, elicit any information, make or keep any record, or use any form of application containing questions or entries concerning race, color, religion, sex, sexual orientation, gender identity, age, ancestry, disability, familial status, national origin, military status, or association with a protected class in connection with the sale or lease of any housing accommodations or the loan of any money, whether or not secured by mortgage or otherwise, for the acquisition, construction, rehabilitation, repair, or maintenance of housing accommodations. Any person may make inquiries, and make and keep records, concerning race, color, religion, sex, sexual orientation, gender identity, age, ancestry, disability, familial status, national origin, military status, association with a protected class or source of income for the purpose of monitoring compliance with this chapter;

(t) Refuse to sell, transfer, assign, rent, lease, sublease, or finance, or otherwise deny or withhold, a burial lot from any

person because of the race, color, sex, sexual orientation, gender identity, age, ancestry, disability, familial status, national origin, military status, association with a protected class or source of income of any prospective owner or user of the lot;

(u) Except as otherwise provided in this division, make an inquiry to determine whether an applicant for the sale or rental of housing accommodations, a person residing in or intending to reside in the housing accommodations after they are sold, rented, or made available, or any individual associated with that person has a disability, or make an inquiry to determine the nature or severity of a disability of the applicant or such a person or individual. The following inquiries may be made of all applicants for the sale or rental of housing accommodations, regardless of whether they have disabilities:

(1) An inquiry into an applicant's ability to meet the requirements of ownership or tenancy;

(2) An inquiry to determine whether an applicant is qualified for housing accommodations available only to persons with disabilities or persons with a particular type of disability;

(3) An inquiry to determine whether an applicant is qualified for a priority available to persons with disabilities or persons with a particular type of disability;

(4) An inquiry to determine whether an applicant currently uses a controlled substance in violation of R.C. § 2925.11 or a substantively comparable municipal ordinance;

(5) An inquiry to determine whether an applicant at any time has been convicted of or pleaded guilty to any offense, an element of which is the illegal sale, offer to sell, cultivation, manufacture, other production, shipment, transportation, delivery, or other distribution of a controlled substance.

(1982 Code, § 743.04) (Ord. 97-07. Passed 2-3-1997; Ord. 2003-34. Passed 9-15-2003; Ord. 2012-11. Passed 4-2-2012; Ord. 2019-16. Passed 4-15-2019.)

### 820.05 POSTING OF NOTICES.

All real estate agents and all persons who operate or manage a dwelling with more than four dwelling units shall post in a conspicuous location in those areas of their places of business located within the City where prospective purchasers, sellers or renters normally make inquiries, and where the terms of a sale or rental are normally negotiated, a notice which contains the following language, printed on a light-colored background, in not less than 14 point type:

"It is a violation of the University Heights Fair Housing Law, in connection with any housing activity, to discriminate against any person because of race, color, religion, sex, sexual orientation, gender identity, age, ancestry, disability, familial status, national origin, military status, association with a protected class or source of income.

For more information, contact: 216-932-7800"

(1982 Code, § 743.05) (Ord. 97-07. Passed 2-3-1997; Ord. 2003-34. Passed 9-15-2003; Ord. 2012-11. Passed 4-2-2012; Ord. 2019-16. Passed 4-15-2019.)

### 820.06 FAIR HOUSING REVIEW COMMISSION.

(a) There is hereby created a Fair Housing Review Commission which shall consist of three members appointed by the Mayor and confirmed by City Council to serve for a term of three years at no salary with the Chairman to be elected by members of the Commission. Commission members can be reappointed to serve no more than three consecutive terms.

(b) The Fair Housing Review Commission shall be a fact finding Commission to advise the Mayor and Council of their findings for appropriate action.

(1982 Code, § 743.06) (Ord. 97-07. Passed 2-3-1997; Ord. 2003-34. Passed 9-15-03; Ord. 2019-16. Passed 4-15-2019.)

### 820.07 ADMINISTRATION.

The Mayor shall appoint the Law Director to work with the Commission in processing complaints on behalf of the Commission.

(1982 Code, § 743.07) (Ord. 97-07. Passed 2-3-1997; Ord. 2003-34. Passed 9-15-03; Ord. 2019-16. Passed 4-15-2019.)

### 820.08 COMPLAINTS.

Any person may allege that a violation of Section 820.04 has occurred, or that a violation will occur and cause injury, by filing with the Fair Housing Review Commission, within one year of the alleged violation, a written complaint setting forth his or her grievance. The complaint shall state, on a printed form made available by the Commission, the name and address of the complainant, the name and address of the person(s) alleged to have committed a violation of Section 820.04 and the particular facts thereof, and such other information as may be required by the Commission. A complaint may be amended at any time. Upon the filing of a complaint, the Law Director shall acknowledge the receipt of the complaint, serving notice thereof to the complainant, which notice shall also contain information as to the time limits and choice of forum provided in this chapter.

(1982 Code, § 743.08) (Ord. 97-07. Passed 2-3-1997; Ord. 2003-34. Passed 9-15-03; Ord. 2019-16. Passed 4-15-2019.)

### 820.09 NOTICE.

Within 15 calendar days after a complaint has been received by the Commission the Law Director shall serve, or cause to be served, in person, or by certified mail, a copy of the complaint on the person (hereinafter referred to as "respondent") alleged to have violated Section 820.04 . Along with the service of the complaint, the Law Director shall advise the respondent in writing of his or her procedural rights and obligations pursuant to this chapter. The respondent may file with the Commission an answer to the complaint.

(1982 Code, § 743.09) (Ord. 97-07. Passed 2-3-1997; Ord. 2003-34. Passed 9-15-03; Ord. 2019-16. Passed 4-15-2019.)

### 820.10 INVESTIGATION.

Within 30 calendar days after a complaint has been received by the Commission, the Law Director shall conduct an investigation of the complaint and shall determine either that:

(a) There are reasonable grounds to believe that a violation of Section820.04 has occurred, in which case the Law Director shall then initiate the conciliation process of Section 820.11 ; or

(b) There are reasonable grounds to believe that a violation of Section820.04 has not occurred, in which case the Law Director shall then dismiss the complaint by preparing a written notice of dismissal, including the reasons therefor, and notify the parties of the dismissal, within five days, by serving a copy of the notice of dismissal by certified mail on the parties. A copy of the notice shall also be filed with the Commission. The notice of dismissal shall advise the complainant of his or her right of appeal under this section. Within 14 days of receipt of the notice of dismissal, the complainant may appeal by filing a written request with the Commission for a review of the complaint. By a majority vote, the Commission may overrule the dismissal and refer the complaint to the Law Director for conciliation pursuant to Section 820.11 .

(c) The Law Director shall complete the investigation within 100 days after receipt of the complaint, unless impracticable, in which case the Law Director shall inform, in writing, the complainant and the respondent of the reasons why the investigation cannot be completed within the time prescribed.

(1982 Code, § 743.10) (Ord. 97-07. Passed 2-3-1997; Ord. 2003-34. Passed 9-15-03; Ord. 2019-16. Passed 4-15-2019.)

### 820.11 CONCILIATION.

If the Law Director has made a determination pursuant to Section820.10 that there are reasonable grounds to believe that a violation of Section 820.04 has occurred, or at such other time after a complaint has been filed, as appropriate, the Law Director shall:

(a) Notify the complainant and respondent of the time, place and date of the conciliation conference at least ten days prior thereto, and both parties shall appear at the conciliation conference in person or by attorney; and

(b) Attempt to resolve the complaint by methods of conference, conciliation and persuasion with all interested parties and such representatives as the parties may choose to assist them. Conciliation conferences shall be informal and nothing said or done during such conferences shall be made public unless the parties agree thereto in writing. The terms of conciliation agreed to by the parties shall be reduced to writing and incorporated into a consent agreement to be signed by the parties, subject to approval by the Fair Housing Review Commission. The terms of the conciliation agreement shall be made public unless the complainant and the respondent agree otherwise, and the Commission determines that disclosure is not required to further the purposes of this chapter. If the complaint has not been resolved by conciliation within 60 calendar days after it has been received, the Law Director shall refer the complaint to the Fair Housing Review Commission for an adjudicative hearing.

(1982 Code, § 743.11) (Ord. 97-07. Passed 2-3-1997; Ord. 2003-34. Passed 9-15-03; Ord. 2019-16. Passed 4-15-2019.)

### 820.12 INJUNCTIVE RELIEF.

At any time after the filing of a complaint, the Director of Law may petition the appropriate court for temporary or preliminary relief pending final determination of the proceedings under this chapter, or as otherwise necessary to carry out the purposes of this chapter, including an order or decree restraining the respondent from doing or causing any act which would render ineffectual any order or action by the Fair Housing Review Commission.

(1982 Code, § 743.12) (Ord. 97-07. Passed 2-3-1997; Ord. 2003-34. Passed 9-15-03; Ord. 2019-16. Passed 4-15-2019.)

### 820.13 HEARINGS.

Within 30 calendar days after the complaint is referred to the Fair Housing Review Commission the Commission shall, upon due and reasonable notice to all parties, conduct a hearing on the complaint. Parties to the hearing shall be the complainant and respondent, and such other persons as the Commission may deem appropriate, including the Law Director. The hearing shall be open to the public. At least seven days before the hearing, the Commission shall serve upon respondent a statement of charges and a summons requiring the attendance of named persons and the production of relevant documents and records. The parties may apply to the Commission to have subpoenas issued in the Commission's name. Failure to comply with a summons or subpoena shall constitute a violation of this chapter. The parties may file such statements with the Commission as they deem necessary. No fewer than two of the same members of the Commission must be present at all times during a hearing. The parties may appear before the Commission in person or by duly authorized representative, and may be represented by legal counsel. The parties shall have the right to present witnesses and cross-examine witnesses, and all testimony and evidence shall be given under oath or by affirmation, administered by

the Chairman of the Commission and all proceedings to be written or audio taped to be considered its formal record of proceedings.

(1982 Code, § 743.13) (Ord. 97-07. Passed 2-3-1997; Ord. 2003-34. Passed 9-15-03; Ord. 2019-16. Passed 4-15-2019.)

### 820.14 HEARING DECISIONS.

Where hearings have been held before the Commission only those members of the Commission who have attended all hearings on the complaint shall participate in the determination of the complaint. Within 15 days of the close of the hearing, the decision shall be rendered, in the form of a written order which shall include findings of fact, a statement of whether the respondent has violated Section 820.04 , and such remedial actions as the Commission may order pursuant to Section 820.16 . The order shall be served upon the parties by certified mail within 15 days of the date of the decision. The order shall be available for public inspection, and a copy shall be provided to any person upon request and payment of reproduction costs.

(1982 Code, § 743.14) (Ord. 97-07. Passed 2-3-1997; Ord. 2003-34. Passed 9-15-03; Ord. 2019-16. Passed 4-15-2019.)

### 820.15 REMEDIAL ACTIONS.

(a) If the Commission finds that the respondent has not violated Section820.04 , its order under Section820.14 shall dismiss the complaint.

(b) If the Commission finds that the respondent has violated Section820.04 , its order under Section820.14 shall provide for the taking of such remedial action(s) as it deems appropriate, which may include, but need not be limited to:

(1) Directing the respondent to cease and desist from violations of Section820.04 and to take such affirmative steps as necessary to effectuate the purposes of this chapter;

(2) Recommending to the Law Director an appropriate court action for the enforcement of Section820.04 , and for such other or further relief as the court may deem appropriate, including, but not limited to, injunctive relief, compensatory damages, punitive damages, and/or attorneys' fees and costs for award to the complainant; such court action shall be required in the event the respondent does not voluntarily comply with remedial actions ordered by the Commission;

(3) Recommending to the Law Director the proceedings for violation of Federal or state law and/or regulations;

(4) Recommending to the Law Director proceedings with any contracting agency in the case of any violation of Section 820.04 by respondent in the course of performing under a contract or sub-contract with the state or any political subdivision or agency thereof, or with the United States of America or any agency or instrumentality thereof, for the purpose of causing a termination of such contract or any portion thereof, or obtaining other relief;

(5) Recommending to the Law Director proceedings with the State of Ohio where applicable, to revoke, suspend or refuse to renew the license of any person found to have violated any provision of Section 820.04 ;

(6) Directing the respondent to reimburse the complainant for his actual and reasonable expenses incurred and to be incurred as a result of each violation found including, but not limited to, expenses for moving and temporary storage of household furnishings, additional expenses in connection with the purchase or rental of a dwelling for alternative accommodations, and reasonable attorneys' fees and costs;

(7) Recommending compensatory damages, as appropriate, or arrange to have adjudicated in court the award of compensatory damages against the respondent;

(8) Assessing civil penalties, as appropriate;

(9) Directing the respondent to comply with such other further relief as the Board may deem appropriate for the enforcement of Section 820.04 .

(c) The Fair Housing Review Commission shall make a final administrative disposition of a complaint within one year after the complaint has been filed, unless it is impracticable to do so, in which case the complainant and the respondent shall be notified in writing of the reasons why disposition of the complaint cannot be made within the time prescribed.

(d) Nothing herein shall be construed to prevent the City from initiating appropriate court action on behalf of the complainant in order to enforce the provisions of this chapter. In addition, upon a finding by the Law Director that there are reasonable grounds to believe that a violation of Section 820.04 has occurred, as provided in Section 820.10 , either the complainant or the respondent, in lieu of participating in the administrative hearing process before the Fair Housing Review Commission, or at any time during said administrative process, may elect to have the case heard in a civil action. Upon notification thereof, the Commission shall recommend to the City that it initiate a civil action in a court of law on behalf of the complainant.

(e) The complainant and the respondent shall have the right to appeal an adverse final determination by the Commission to the Cuyahoga County Common Pleas Court pursuant to R.C. Chapter 2506, or in such other forum or court of competent jurisdiction as provided by law.

(1982 Code, § 743.15) (Ord. 97-07. Passed 2-3-1997; Ord. 2003-34. Passed 9-15-03; Ord. 2019-16. Passed 4-15-2019.)

### 820.16 JUDICIAL RELIEF.

The City, or the complainant, or any person, aggrieved by a violation of any provision of this chapter may, at any time within one year from the date of the alleged violation, and in lieu of proceeding with the administrative process set forth in this chapter, apply to any court of competent jurisdiction for appropriate relief including, but not limited to:

(a) Injunctive relief or an order otherwise compelling compliance with this chapter;

(b) Compensatory damages, and/or punitive damages;

(c) Reasonable attorneys' fees and costs provided that said complainant, in the opinion of the court, is not financially able to assume said attorneys' fees; and/or

(d) Such other or further relief as is appropriate for the enforcement of this chapter and the elimination of violations thereof.

(1982 Code, § 743.16) (Ord. 97-07. Passed 2-3-1997; Ord. 2003-34. Passed 9-15-03; Ord. 2019-16. Passed 4-15-2019.)

### 820.17 ADDITIONAL REMEDIES.

This chapter shall not prevent the City or any person from exercising any right or seeking any remedy to which that person might otherwise be entitled, or from filing any complaint with any other agency or court of law or equity.

(1982 Code, § 743.17) (Ord. 97-07. Passed 3-2-1997; Ord. 2003-34. Passed 9-15-03; Ord. 2019-16. Passed 4-15-2019.)