# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | | |
|---|---|---|
| **ZG PROPERTIES, LLC,** | ) | |
| | ) | **Case No. 1:25-cv-2780** |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **Judge Christopher A. Boyko** |
| | ) | |
| **THE CITY OF UNIVERSITY HEIGHTS**, | ) | **Magistrate Judge Jonathan D. Greenberg** |
| | ) | |
| | ) | |
| Defendant. | ) | |

## MOTION FOR PARTIAL JUDGMENT ON THE PLEADINGS

Pursuant to Federal Rule of Civil Procedure 12(c), Plaintiff ZG Properties, LLC ("ZG Properties") respectfully moves for judgment on the pleadings as to liability on Counts I–V of the Amended Complaint filed against the City of University Heights ("City"). The pleadings establish that the City enacted, maintained, and invoked a fair-housing regime—known as the "source-of-income" provision ("Source of Income Provision")—that treats a landlord's decision not to accept voucher-backed applicants as unlawful discrimination, even though participation in Section 8 is voluntary under federal law. For the reasons set forth in the attached Memorandum in Support, judgment should be entered in favor of ZG Properties on all claims.

Respectfully submitted,

*/s/Elizabeth S. Alexander*
Elizabeth S. Alexander (0096401), *Trial Attorney*
Henry J. Moseley (0102673)
52 East Gay Street, P.O. Box 1008
Columbus, Ohio 43216-1008
Phone: (614) 464-6400
Fax: (614) 719-4630
esalexander@vorys.com
hjmoseley@vorys.com

Bryan J. Farkas (0072779)
Vorys, Sater, Seymour and Pease LLP
200 Public Square, Suite 1400
Cleveland, OH 44114
Telephone (614) 464-5691
bjfarkas@vorys.com

Laurence Powers, Esq.
Robert G. Friedman, Esq. (0063811)
Rachel E. Cohen, Esq.  (0097050)
Powers Friedman Linn, PLL
25550 Chagrin Boulevard, Suite 400
Cleveland, Ohio 44122
Telephone (216) 514-1180
LPowers@PFL-Law.com

*Counsel for ZG Properties, LLC*

**TABLE OF CONTENTS**

PAGE

I.     ISSUES TO BE DECIDED ................................................................................. 1

II.    SUMMARY OF ARGUMENT...................................................................... 1

III.   THE PLEADINGS........................................................................................ 3

      A.    ZG Properties Owns and Operates Multi-Family Residential Rental Units in the City.......................................................................................... 3

      B.    Section 8 Is a Voluntary Program that Subjects Landlords to Substantial Costs and Intrusive, Warrantless Searches................................................. 3

      C.    The City's Source of Income Provision and *De Facto* Enforcement Turns Section 8 into a Mandatory Program .............................................. 4

      D.    The City Proposes Legislation Demonstrating That the Source of Income Provision Compels Section 8 Participation...................................... 6

IV.   STANDARD OF REVIEW ........................................................................... 7

V.    ANALYSIS ................................................................................................... 7

      A.    The Source of Income Provision Is Preempted Because It Conflicts with Federal Law by Turning Section 8's Voluntary Scheme into a Mandatory One (Count 1) ....................................................................... 7

      B.    The Source of Income Provision Is Preempted Under State Law Because It Compels Rent Control and Rent Stabilization (Count 2)................................ 9

      C.    The Source of Income Provision Violates ZG Properties' Fourth Amendment Rights by Subjecting ZG Properties to Warrantless Searches (Count 3) ....... 11

      D.    The City Violated ZG Properties' Rights Without Adequate Due Process (Count 4) ................................................................................... 13

      E.    By Compelling Section 8 Participation, the City Is Violating ZG Properties' Substantive Due Process Rights (Count 5) ..................................... 15

VI.   CONCLUSION.............................................................................................. 16

## TABLE OF AUTHORITIES

**Cases**

*Bethel v. Jenkins*,
  988 F.3d 931 (6th Cir. 2021)................................................................................ 14

*Board of Regents of State Colls. v. Roth*,
  408 U.S. 564 (1972).............................................................................................. 14

*Braun v. Ann Arbor Charter Twp.*,
  519 F.3d 564 (6th Cir. 2008)................................................................................ 15

*Brown v. Louisville-Jefferson Cty. Metro Gov't*,
  135 F.4th 1022 (6th Cir. 2025) .............................................................................. 6

*Cahoo v. SAS Analytics Inc.*,
  912 F.3d 887 (6th Cir. 2019)................................................................................ 14

*Chandler v. Vill. of Chagrin Falls*,
  296 F. App'x 463 (6th Cir. 2008)......................................................................... 14

*Churchill Downs Tech. Initiatives Co. v. Mich. Gaming Control Bd.*,
  162 F.4th 631 (6th Cir. 2025)............................................................................. 8, 9

*City of Carlisle v. Martz Concrete Co.*,
  2007-Ohio-4362 (Ohio Ct. App.)........................................................................... 9

*EJS Props., LLC v. City of Toledo*,
  698 F.3d 845 (6th Cir. 2012)................................................................... 14, 15, 16

*Fednav, Ltd. v. Chester*,
  547 F.3d 607 (6th Cir. 2008).................................................................................. 8

*Golf Vill. N., LLC v. City of Powell*,
  14 F.4th 611 (6th Cir. 2021)................................................................................ 14

*Graoch Assocs. # 33, L.P. v. Louisville/Jefferson Cty. Metro Human Rels. Comm'n*,
  508 F.3d 366 (6th Cir. 2007).................................................................................. 8

*Jackson v. Prof'l Radiology Inc.*,
  864 F.3d 463 (6th Cir. 2017).................................................................................. 7

*Kaiser Aetna v. United States*,
  444 U.S. 164 (1979).............................................................................................. 14

*Kansas v. Garcia*,
  589 U.S. 191 (2020).............................................................................................. 8

*Ky. Dep't of Corr. v. Thompson*,
490 U.S. 454 (1989).................................................................................................. 14

*Mariemont Apartment Ass'n v. Vill. of Mariemont*,
2007-Ohio-173 (Ohio Ct. App.).............................................................................. 9

*Ohio Assn. of Private Detective Agencies, Inc. v. North Olmsted*,
602 N.E.2d 1147 (Ohio 1992)................................................................................ 10

*Paskvan v. City of Cleveland Civil Serv. Comm'n*,
946 F.2d 1233 (6th Cir. 1991) ................................................................................. 7

*Paterek v. Vill. of Armada*,
801 F.3d 630 (6th Cir. 2015)................................................................................. 16

*Pearson v. Grand Blanc*,
961 F.2d 1211 (6th Cir. 1992) ............................................................................... 16

*People v. Commons West, LLC*,
2026 N.Y. App. Div. LEXIS 1351, 2026 NY Slip Op 01253 (N.Y. App. Div. Mar. 5, 2026)... 12

*Pettway v. Smith*,
No. 1:19-cv-1044, 2020 U.S. Dist. LEXIS 156802 (N.D. Ohio May 13, 2020) ........................ 7

*Platt v. Bd. of Comm'rs on Grievs. & Discipline of the Ohio Supreme Court*,
894 F.3d 235 (6th Cir. 2018) .................................................................................. 6

*S. Ohio Bank v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
479 F.2d 478 (6th Cir. 1973).................................................................................. 7

*Salute v. Stratford Greens Garden Apartments*,
136 F.3d 293 (2d Cir. 1998) ................................................................................... 8

*Slaybaugh v. Rutherford Cty.*,
114 F.4th 593 (6th Cir. 2024).................................................................................11

*Stevens v. Hunt*,
646 F.2d 1168 (6th Cir. 1981) ............................................................................... 16

*United States v. United States District Court*,
407 U.S. 297 (1972)...............................................................................................11

*Warren v. City of Athens*,
411 F.3d 697 (6th Cir. 2005) ........................................................................... 15, 16

*Welsh v. Wisconsin*,
466 U.S. 740 (1984)...............................................................................................11

iii

*Women's Med. Prof'l Corp. v. Baird,*
   438 F.3d 595 (6th Cir. 2006) ........................................................................... 14

**Statutes**

42 U.S.C. § 1437f .................................................................................4, 10, 11, 14

42 U.S.C. § 1437f(8)(A)–(F) ......................................................................11

42 U.S.C. § 1983.................................................................................... 17

42 U.S.C. § 1988.................................................................................... 17

O.R.C. § 5321 ...................................................................................... 10

O.R.C. § 5321.19(A)............................................................................... 10

**Other Authorities**

Housing Code § 820.04(a) ......................................................................... 4

**Rules**

Fed. R. Civ. P. 12(c) ............................................................................... 7

Fed. R. Evid. 201(b)................................................................................ 6

**Regulations**

24 C.F.R. § 982 ...............................................................................3, 10, 11, 14

24 C.F.R. § 982.405(a)............................................................................11

24 C.F.R. § 982.405(b)............................................................................11

24 C.F.R. § 982.507 (d)............................................................................ 4

24 C.F.R. § 982.507(a)(1) ...................................................................... 4, 10

**Constitutions**

U.S. Const. amend. IV .............................................................................11

U.S. Const. amend. XIV .......................................................................... 13, 15

<u>**MEMORANDUM IN SUPPORT**</u>

**I.      ISSUES TO BE DECIDED**

ZG Properties' motion for judgment on the pleadings presents five issues for the Court to decide:

1.      Whether the Source of Income Provision is preempted by federal law because it turns a voluntary federal program into a mandatory one;

2.      Whether the Source of Income Provision is preempted by Ohio law because it imposes rent control or rent stabilization in violation of the Ohio Landlord Tenant Act;

3.      Whether the Source of Income Provision violates ZG Properties' Fourth Amendment rights by compelling ZG Properties to submit to warrantless inspections and record access;

4.      Whether the Source of Income Provision violates ZG Properties' procedural due process rights by failing to conclude its investigation into administrative complaints, thereby consenting to prospective tenants' position that the Source of Income Provision requires Section 8 participation; and

5.      Whether the Source of Income Provision violates ZG Properties' substantive due process rights by unlawfully requiring Section 8 participation and preventing ZG Properties from choosing who it contracts with.

**II.     SUMMARY OF ARGUMENT**

This case concerns the City's unlawful attempt to override federal law through a local ordinance, coercing private landlords to join a voluntary federal program.  The City admits that participation in the Section 8 Housing Choice Voucher Program is voluntary because of the significant burdens it imposes on landlords—including non-negotiable contracts, warrantless

1

inspections, and strict rent controls.  Yet, the City has weaponized its Source of Income Provision to force ZG Properties to accept Section 8 vouchers, threatening administrative actions and private lawsuits for simply exercising its federally protected right to decline participation in the Section 8 program.  ZG Properties brought this action to challenge this conflict between federal law and the City's Source of Income Provision and preserve its right to decline participation in Section 8.

The City's own admissions leave no room for factual dispute.  The City's Answer admits key facts establishing that:

(1) Section 8 is a voluntary—not compulsory—federal housing program because it imposes "substantial costs and intrusive, warrantless searches" (Am. Compl. ¶ 14; Answer ¶ 8.);

(2) The City's housing code ("Housing Code") contains the Source of Income Provision challenged here (Am. Compl. ¶¶ 27–28; Answer ¶ 11.);

(3) The plain language of the Source of Income Provision prohibits landlords from refusing to rent to tenants based on their source of income, including Section 8 vouchers, effectively forcing participation in the program (Am. Compl. ¶¶ 27–28; ECF No. 11-1, Ex. 1 to Am. Compl., PageID # 189–90; Answer ¶ 11.);

(4) Private citizens using Section 8 vouchers lodged complaints against ZG Properties alleging violations of the Source of Income Provision (Am. Compl. ¶¶ 37–42; Answer ¶ 15.); and

(5) The City failed to conclude its investigation into the complaints and failed to resolve those complaints within the time required by the City's own ordinance (Am. Compl. ¶¶ 30–35, 37–42; Answer ¶¶ 13, 15.).

By turning a voluntary federal program into a local mandate, the City has not only violated federal and state law but also violated ZG Properties' constitutional rights.  The City's admissions demonstrate that this case is ripe for judgment on the issue of liability on all claims.

For these reasons and those set forth more fully below, the Court should enter judgment on the pleadings in favor of ZG Properties on liability as to all counts of the Amended Complaint.

### III.    THE PLEADINGS

#### A.    ZG Properties Owns and Operates Multi-Family Residential Rental Units in the City.

ZG Properties manages operates, leases, and maintains multi-family residential rental units in the City.  (ECF No. 11, Amended Complaint ("Am. Compl."), ¶ 17.)  One such multi-family residential property is located at 2200 Milton Rd., University Heights, Ohio 44118 ("the Property").  (*Id.* ¶ 18.)  ZG Properties owns and acts as a landlord for the Property.  (*Id.* ¶ 19.)

As part of its duties as a landlord, ZG Properties screens tenant applications, creates lease agreements, and collects rental payments to minimize financial risk and ensure its residents can pay rent timely.  (*Id.* ¶¶ 20–21.)  Its screening process requires prospective tenants to demonstrate that their monthly household income is at least triple the amount of monthly rent for the unit they seek.  (*Id.* ¶ 22.)  ZG Properties will not rent to the prospective tenant if they do not meet the monthly income requirement.  (*Id.*)  Its monthly income requirement reduces the risk that tenants will fall behind on rent, face eviction, or turnover quickly.  (*Id.* ¶ 23.)

#### B.    Section 8 Is a Voluntary Program that Subjects Landlords to Substantial Costs and Intrusive, Warrantless Searches.

Section 8 is a voluntary federal program to subsidize housing for low-income citizens.  (*Id.* ¶ 9; ECF No. 12, City's Answer to Am. Compl. ("Answer"), ¶ 4.)  Public housing authorities ("PHAs") administer Section 8.  (Am. Compl. ¶¶ 9, 11; Answer ¶¶ 4, 6.)  When landlords agree to participate in Section 8, they enter non-negotiable Housing Assistance Payment contracts ("HAP Contracts") with local PHAs.  (Am. Compl. ¶ 13.)  HAP Contracts govern several terms of Section 8 rentals, including the amount of rent landlords may charge to prospective tenants.  (*Id.*)  HAP Contracts also require landlords to obtain Section 8 approval to increase rent, consent to warrantless government inspections of rented units, common areas, and business records, and make any repairs deemed necessary by a Section 8 inspector.  (*Id.* (citing 24 C.F.R. § 982; 42

3

U.S.C. § 1437f).) Indeed, landlords accepting Section 8 "must give the PHA information requested by the PHA on rents charged by the owner for other units in the premises or elsewhere" so that the PHA may determine that the rent being charged is "reasonable." 24 C.F.R. § 982.507(a)(1), (d).

The City expressly admits that **"[b]ecause participation in Section 8 subjects a landlord to substantial costs and intrusive, warrantless searches, participation in Section 8 is voluntary**." (Am. Compl. ¶ 14; Answer ¶ 8 (emphasis added).) Due to these substantial costs and intrusive requirements, ZG Properties is selective about when it accepts Section 8 vouchers. (Am. Compl. ¶ 24.)

C. **The City's Source of Income Provision and *De Facto* Enforcement Turns Section 8 into a Mandatory Program.**

Despite recognizing that Section 8 is a voluntary program, the City compels participation in Section 8 through its Housing Code. (Am. Compl. ¶¶ 25–50.) Through the Source of Income Provision, the City prohibits property owners from refusing to rent property to prospective tenants based on the source of the prospective tenants' income. (Am. Compl. ¶ 26 (citing Housing Code § 820.04(a)); Answer ¶ 11.) The Source of Income Provision defines "source of income" as:

> [L]awful income derived from wages, social security, supplemental security income, **all forms of Federal, state or local assistance payments or subsidies**, child support, spousal support, and public assistance which can be verified and substantiated.

(ECF No. 11-1, Housing Code, Ex. 1 to Am. Compl., PageID # 189 (emphasis added).) Relevant here, the Housing Code and Source of Income Provision prohibit landlords from refusing tenants who seek to pay rent with Section 8 vouchers. (Am. Compl. ¶¶ 26–28; Answer ¶ 11.) In § 820.04(a), The Housing Code states:

> It is hereby declared to be a discriminatory housing practice and unlawful for any person to . . . **refuse to** sell, transfer, assign, **rent**, lease, sublease, finance, negotiate, **or otherwise deny or make unavailable a dwelling to any person because of . . . source of income** of any present or prospective owner, occupant, or user of such dwelling[.]

4

(ECF No. 11-1, Housing Code, Ex. 1 to Am. Compl., PageID # 190 (emphasis added).)

When a prospective tenant believes they are being denied tenancy due to their source of income, the City permits that prospective tenant to either bring an administrative action with the City or file a lawsuit.  (Am. Compl. ¶¶ 30–35; Answer ¶ 13.)  Administrative actions are filed with the City's Fair Housing Review Commission ("Housing Commission").  (*Id.*)  The City must then take measures to resolve the action by concluding an investigation into the allegations within 100 days and determining whether a violation of the City's Housing Code has occurred.  (*Id.*)  If an investigation cannot conclude within 100 days, the City must inform the landlord and complainant. (*Id.*)  The City must either: (a) conclude that a violation has occurred and facilitate a resolution; or (b) dismiss the complaint and notify the landlord of the dismissal in writing.  (*Id.*)

In 2024, prospective tenants filed administrative complaints with the Housing Commission, alleging violations of the Source of Income Provision.  (Am. Compl. ¶ 39, Exhibit 2.)  The complainants were Section 8 voucher recipients who claimed that, because ZG Properties required tenants to make triple the monthly rent in income each month, ZG Properties was discriminating against them due to their source of income.  (*E.g.*, ECF No. 11-2, Am. Compl., Ex. 2, at PageID # 200.)  In essence, the complainants could not simultaneously earn three times the rent in income and qualify to receive Section 8 vouchers.  (*Id.*)

The City never concluded its investigation into the complaint and it did not deny the prospective tenants' claims.  (Am. Compl. ¶¶ 39–42; Answer ¶ 15 (admitting that "the City failed to conclude its investigation").)  By failing to render a formal decision, the City rendered a *de facto* decision in favor of the prospective tenants, thereby empowering the prospective tenants to sue ZG Properties for alleged violations of the Source of Income Provision.  (Am. Compl. ¶ 42; Answer ¶ 15 (admitting that prospective tenants filed a lawsuit for Section 8 acceptance).)  Those

5

prospective tenants have understood the City's inaction as tacit approval that ZG Properties must accept their Section 8 vouchers.

> **D.    The City Proposes Legislation Demonstrating That the Source of Income Provision Compels Section 8 Participation.**

Thereafter, the City considered amending the Source of Income Provision to clarify that the City could not compel participation in Section 8.  The City's proposed legislation would clarify that "source of income" includes only assistance "which a person renting property to another person has **voluntarily** agreed to accept," and to add an exemption stating that the ordinance does not require any person renting property to "**involuntarily participate**" in any federal, state, local, or private rental-assistance program.  (Am. Compl. ¶¶ 44–48; ECF No. 11-3, Am. Compl. Ex. 3, PageID #210–213 (emphasis added).)  Ultimately, the City abandoned its proposed legislation without resolving the administrative complaints against ZG Properties.  (Am. Compl. ¶¶ 46–50.)[1]

ZG Properties filed its Amended Complaint on April 28, 2026, asserting five claims: (1) preemption under federal law; (2) preemption under Ohio state law; (3) violation of the Fourth Amendment; (4) violation of procedural due process; and (5) violation of substantive due process. (Am. Compl. ¶¶ 51–107.)  The City filed its Answer on May 20, 2026.  (ECF No. 12, Answer.) Accordingly, the pleadings are closed, the City's admissions make clear that no material issue of fact remains regarding liability.  ZG Properties now moves for judgment on the pleadings.[2]

---

[1] The City inexplicably denies that it considered this proposed legislation.  (Am. Compl. ¶¶ 46–47; Answer ¶ 16.)  The Court should reject the City's baseless denial and rely upon this proposed legislation, however, because it is a public record accessible on the City's own website.  Courts may take judicial notice of "documents of public record."  *Platt v. Bd. of Comm'rs on Grievs. & Discipline of the Ohio Supreme Court*, 894 F.3d 235, 245 (6th Cir. 2018) (quoting *Passa v. City of Columbus*, 123 F. App'x 694, 697 (6th Cir. 2005).); *Brown v. Louisville-Jefferson Cty. Metro Gov't*, 135 F.4th 1022, 1030 (6th Cir. 2025).  The City's proposed amendment to the Source of Income Provision is a matter of public record, and it is publicly available online: https://universityheightsoh.gov/council/agenda-and-minutes/.

[2] ZG Properties does not move for judgment on the pleadings regarding its request for damages.

## IV.     STANDARD OF REVIEW

Motions for judgment on the pleadings are governed by Federal Rule of Civil Procedure 12(c).  After the pleadings are closed, a party may move for judgment on the pleadings.  Fed. R. Civ. P. 12(c).  When reviewing a Rule 12(c) motion, courts accept as true "all well-pleaded material allegations of the pleadings of the opposing party." *Jackson v. Prof'l Radiology Inc.*, 864 F.3d 463, 466 (6th Cir. 2017) (quoting *S. Ohio Bank v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 479 F.2d 478, 480 (6th Cir. 1973)).  The Court must grant a motion under Rule 12(c) if there is no material issue of fact and the moving party is entitled to judgment as a matter of law.  *Pettway v. Smith*, No. 1:19-cv-1044, 2020 U.S. Dist. LEXIS 156802, at *3 (N.D. Ohio May 13, 2020) (quoting *Paskvan v. City of Cleveland Civil Serv. Comm'n*, 946 F.2d 1233, 1235 (6th Cir. 1991)).

## V.     ANALYSIS

ZG Properties is entitled to judgment on the pleadings as to liability for all counts of its Amended Complaint.  It is undisputed that Section 8 is voluntary.  Yet, the City has interpreted and applied the Source of Income Provision to compel participation in Section 8.

### A.     The Source of Income Provision Is Preempted Because It Conflicts with Federal Law by Turning Section 8's Voluntary Scheme into a Mandatory One (Count 1).

The City's Source of Income Provision is preempted because it conflicts with federal law. (Am. Compl., Count 1.)  A municipal ordinance or code provision is preempted by federal law when the federal law expressly preempts it ("express preemption"), when Congress has regulated an area so pervasively that no state or local government can also regulate within the field ("field preemption"), or where the local law conflicts with federal law ("conflict preemption").  *See Fednav, Ltd. v. Chester*, 547 F.3d 607, 618–19 (6th Cir. 2008).  Under conflict preemption, a state or local law is preempted where the law "'stands as an obstacle to the accomplishment' of Congress's objectives." *Churchill Downs Tech. Initiatives Co. v. Mich. Gaming Control Bd.*, 162

7

F.4th 631, 638 (6th Cir. 2025) (quoting *Kansas v. Garcia*, 589 U.S. 191, 210–11 (2020)).  If a state or local law interferes with federal methods to reach Congress's objectives, that state or local law creates a conflict.  *Id.* at 639 ("[C]ourts have found conflict preemption when states tailor statutes to interfere with federal methods, even if states share federal aims.").

Making Section 8 a voluntary program is Congress's method to effectuate fair housing goals.  Congress established Section 8 as "a voluntary program through which the federal government provides rent subsidies to eligible low-income families who rent from participating landlords."  *Graoch Assocs. # 33, L.P. v. Louisville/Jefferson Cty. Metro Human Rels. Comm'n*, 508 F.3d 366, 369 (6th Cir. 2007); *see also Salute v. Stratford Greens Garden Apartments*, 136 F.3d 293, 300 (2d Cir. 1998) ("We think that the voluntariness provision of Section 8 reflects a congressional intent that the burdens of Section 8 participation are substantial enough that participation should not be forced on landlords.").  Congress intentionally made participation in Section 8 voluntary due to the substantial burdens associated with the Section 8 regulatory framework.  *See Salute*, 136 F.3d at 301 ("[W]e think it clear in this case that the burden of participating in the Section 8 program cannot be viewed as imposing only reasonable costs or insubstantial burdens, if only because Congress decided this issue by making participation voluntary.").

Here, the City is frustrating those federal objectives through its application of the Source of Income Provision.  Because the City's Source of Income Provision mandates participation in Section 8, it is interfering with federal methods of accomplishing Congress's objectives in establishing Section 8.  *See Churchill Downs*, 162 F.4th at 638–39.  The City admits that the voluntariness of Section 8 is specifically due to the substantial costs and intrusive, warrantless searches of a landlord's property to which landlords consent when accepting Section 8 vouchers.

(Am. Compl. ¶¶ 9, 14; Answer ¶¶ 4, 8.)  The Source of Income Provision, however, is mandatory. It states:

> It is hereby declared to be a discriminatory housing practice and unlawful for any person to . . . **refuse to** sell, transfer, assign, **rent**, lease, sublease, finance, negotiate, **or otherwise deny or make unavailable a dwelling to any person because of . . . source of income** of any present or prospective owner, occupant, or user of such dwelling[.]

(ECF No. 11-1, Housing Code, Ex. 1 to Am. Compl., PageID # 190 (emphasis added).)  And the Source of Income Provision defines "source of income" as "**all forms of Federal, state or local assistance payments or subsidies[.]"**  (*Id.* at PageID # 189 (emphasis added).)  Without the Source of Income Provision, ZG Properties may continue to rent to tenants without the Section 8 requirements.  But due to the City's application of the Source of Income Provision, ZG Properties must now accept all Section 8 vouchers and subject itself to the burdensome regulatory scheme, or else face administrative actions, indefinite investigations from the City, and lawsuits.

Because the City admits that Section 8 is voluntary, yet the City has adopted the Source of Income Provision to compel participation in Section 8, ZG Properties is entitled to judgment on Count 1 and a declaration that Section 8 is preempted by federal law.

**B.**    **The Source of Income Provision Is Preempted Under State Law Because It Compels Rent Control and Rent Stabilization (Count 2).**

The Source of Income Provision is also preempted under Ohio law.  (Am. Compl., Count 2.)  Under Ohio law, where a local ordinance is "utterly inconsistent" with state law, the local ordinance is preempted.  *Mariemont Apartment Ass'n v. Vill. of Mariemont*, 2007-Ohio-173, ¶ 13 (Ohio Ct. App.); *City of Carlisle v. Martz Concrete Co.*, 2007-Ohio-4362, ¶ 26 (Ohio Ct. App.) (citing *Ohio Assn. of Private Detective Agencies, Inc. v. North Olmsted*, 602 N.E.2d 1147, 1149 (Ohio 1992)).  Through Ohio Revised Code § 5321 ("Ohio Landlord Tenant Act") Ohio has explicitly preempted political subdivisions from enacting, adopting, maintaining, or enforcing any

law that conflicts with the Ohio Landlord Tenant Act or otherwise "regulates the rights and obligations of parties to a rental agreement . . . **including, without limitation, by any way imposing or requiring rent control or rent stabilization**."  Ohio Rev. Code § 5321.19(A) (emphasis added).

Here, the Source of Income Provision is utterly inconsistent with the Ohio Landlord Tenant Act.  As discussed above, the Source of Income Provision compels ZG Properties' participation in Section 8.  And when landlords participate in Section 8, they must enter non-negotiable HAP Contracts that, among other things, govern the amount of rent landlords may charge and require approval to increase rent prices.  (Am. Compl. ¶ 13 (citing 24 C.F.R. § 982; 42 U.S.C. § 1437f).) Landlords must consent rent control by local PHAs, including by permitting local PHAs to determine whether the unit's rent is "reasonable" and "comparable [to] unassisted units in the premises."  24 C.F.R. § 982.507(a)(1), (d) ("[T]he PHA may not approve a lease until the PHA determines that the initial rent to owner is a reasonable rent.").  Therefore, by forcing ZG Properties to participate in Section 8, the City is attempting to regulate the rights and responsibilities ZG Properties has with its prospective tenants, including the amount of rent ZG Properties may charge. (Am. Compl. ¶¶ 65–72.)  The Source of Income Provision directly accomplishes what the City is barred from doing under the Ohio Landlord Tenant Act, the City is "imposing [and] requiring rent control or rent stabilization."  Ohio Rev. Code § 5321.19(A).

Because the City's Source of Income Provision is preempted by the Ohio Landlord Tenant Act, ZG Properties is entitled to judgment on the pleadings on Count 2 and a declaration that the Source of Income Provision is preempted by state law.

**C.** **The Source of Income Provision Violates ZG Properties' Fourth Amendment Rights by Subjecting ZG Properties to Warrantless Searches (Count 3).**

By compelling ZG Properties' participation in Section 8, the City is violating ZG Properties' Fourth Amendment rights. (Am. Compl., Count 3.) The Fourth Amendment protects property owners from unreasonable searches and seizures. U.S. Const. amend. IV; *Slaybaugh v. Rutherford Cty.*, 114 F.4th 593, 601 n.2 (6th Cir. 2024) ("The Fourth Amendment requires that a search or seizure be both lawfully supported (such as by a warrant) and reasonably executed."). The right to be free from warrantless searches is fundamental. *See Welsh v. Wisconsin*, 466 U.S. 740, 748 (1984) ("It is axiomatic that the 'physical entry of the home is the chief evil against which the wording of the Fourth Amendment is directed.'") (quoting *United States v. United States District Court*, 407 U.S. 297, 313 (1972)). Section 8 requires landlords to consent to warrantless searches of both the physical property and business records. 24 C.F.R. § 982; 42 U.S.C. § 1437f. The Section 8 program states that landlords must consent to initial, biennial, and interim inspections from the local Public Housing Authority. 42 U.S.C. § 1437f(o)(8)(A)–(F); 24 C.F.R. § 982.405(a) ("The PHA must inspect the unit leased to a family prior to the initial term of the lease to determine if the unit meets the [housing quality standards]."); *see also* 24 C.F.R. § 982.405(b) ("The PHA must inspect the unit at least biennially during assisted occupancy to ensure that the unit continues to meet the [housing quality standards].").

Compelling a landlord to participate in Section 8—and therefore compelling a landlord to consent to unwanted searches—runs afoul of the Fourth Amendment. The *People v. Commons West, LLC* court considered this very issue, holding that a law protecting prospective tenants from being denied housing based on their source of income was unconstitutional on Fourth Amendment grounds. *See People v. Commons West, LLC*, 2026 N.Y. App. Div. LEXIS 1351, 2026 NY Slip Op 01253 (N.Y. App. Div. Mar. 5, 2026). There, the law effectively required landlords to accept

11

Section 8 vouchers in the precise way the City does here. *Id.* at \*3–4. The law "forbid[] housing discrimination based on individuals' lawful source of income, defined to include Section 8 vouchers." *Id.* The landlords in that matter "refused to rent apartments to [the prospective tenants] on the ground that they were receiving housing assistance pursuant to Section 8." *Id.* at \*3.

The Court held that the local ordinance was unconstitutional because it forced landlords to consent to governmental searches of their rental properties and records. *Id.* at \*10–16. The court rejected the argument that the source-of-income law itself authorized no searches, explaining that the constitutional defect arose because the law indirectly compelled landlords to enter the Section 8 regime, which in turn required them to submit to inspections and record access. *Id.* at \*9–10. The court stated, "although the source-of-income discrimination law does not, itself, require any searches, they are indirectly compelled through the terms of the Section 8 program and the HAP contract, which obligate landlords to make their premises and records available for searches." *Id.*

Here, the City is using the Source of Income Provision to force ZG Properties into the same unconstitutional choice struck down in *Commons West*—either participate in Section 8 and submit to warrantless inspections and record access or face liability. (Am. Compl. ¶¶ 1–3.) The City precludes landlords like ZG Properties from "refus[ing] to . . . rent, lease, sublease, . . . or otherwise deny or make unavailable a dwelling to any person" because of their source of income, including "all forms of Federal, state or local assistance payments or subsidies." (ECF No. 11-1, Housing Code, Ex. 1 to Am. Compl., PageID # 189–90.) By precluding landlords from refusing to rent to prospective tenants on the basis that they receive Federal, state or local assistance—including Section 8 vouchers—the City requires landlords to accept Section 8 vouchers. Because a landlord is required to accept Section 8 vouchers to comply with the Housing Code, the landlord is then required to subject itself to unwanted searches in violation of the Fourth Amendment.

12

The City's proposed amended ordinance demonstrates the fatal flaw in the current Source of Income Provision. (ECF No. 11-3, Proposed Ordinance, Ex. 3 to Am. Compl., PageID #205–22.) The City's amendment clarified that landlords were not required to "involuntary participate" in federal rental-assistance programs such as Section 8, and that "source of income" includes only assistance "which a person renting property to another person has voluntarily agreed to accept." (Am. Compl. ¶¶ 44–48; ECF No. 11-3, Am. Compl. Ex. 3, PageID #210–213).) The proposed amendment underscores the central point: the current ordinance contains no such limitation. That omission is critical. The City refused to amend the Source of Income Provision, maintaining the requirement for landlords to accept Section 8 vouchers or face discrimination charges. In other words, the City wants—and requires—all landlords to accept Section 8 vouchers.

For these reasons, the Court should grant ZG Properties' motion for judgment on the pleadings on Count 3 and issue a declaration that the Source of Income Provision violates ZG Properties' Fourth Amendment rights by compelling participation in Section 8 and, as a result, the warrantless searches required under Section 8.

### D. The City Violated ZG Properties' Rights Without Adequate Due Process (Count 4).

The City violated ZG Properties' constitutional right to procedural due process by failing to conclude its administrative investigation. (Am. Compl., Count 4.) The Fourteenth Amendment protects the right to be free from deprivation of procedural due process. U.S. Const. amend. XIV. Courts analyze due process claims by first determining whether a plaintiff has a liberty or property interest that has been interfered with, and if so, whether the process for that interference was sufficient. *Bethel v. Jenkins*, 988 F.3d 931, 942 (6th Cir. 2021) (quoting *Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989)). The required process is flexible, but "the Constitution requires some kind of a hearing before the State deprives a person of liberty or property." *Cahoo*

*v. SAS Analytics Inc.*, 912 F.3d 887, 902 (6th Cir. 2019) (quoting *Chandler v. Vill. of Chagrin Falls*, 296 F. App'x 463, 470 (6th Cir. 2008)).  "The right to contract is a long-recognized liberty interest." *EJS Props., LLC v. City of Toledo*, 698 F.3d 845, 859 (6th Cir. 2012); *see also Women's Med. Prof'l Corp. v. Baird*, 438 F.3d 595, 611 (6th Cir. 2006) (quoting *Board of Regents of State Colls. v. Roth*, 408 U.S. 564, 572 (1972)).  Additionally, "[t]here is no dispute that a property owner's right to exclude is 'one of the most essential sticks in the bundle of rights that are commonly characterized as property.'"  *Golf Vill. N., LLC v. City of Powell*, 14 F.4th 611, 618 (6th Cir. 2021) (quoting *Kaiser Aetna v. United States*, 444 U.S. 164, 176 (1979)).

Here, the City violated ZG Properties' liberty interests in the freedom to contract by compelling ZG Properties to enter into HAP Contracts it would otherwise reject, and its right to exclude others from its Property.  As a part of its right to freedom of contract, ZG Properties has the right to choose its tenants and freely negotiate the terms of its leases.  And as part of its right to exclude others from its Property, ZG Properties has the right to refuse inspectors.  When a landlord accepts Section 8 vouchers, however, Section 8 requires landlords to enter into HAP Contracts, and those contracts require landlords to consent to inspections.  (Am. Compl. ¶ 13 (citing 24 C.F.R. § 982; 42 U.S.C. § 1437f).)  Although ZG Properties has the right to refuse Section 8 vouchers—and their accompanying requirements—the City has applied the Source of Income Provision to require a landlord to accept Section 8 and enter into those HAP Contracts.

Prior to filing their lawsuit, prospective tenants brought administrative claims against ZG Properties alleging violation of the Source of Income Provision.  (Am. Compl. ¶¶ 37–43; Answer ¶ 15.)  But the City failed to conclude its investigation and render a decision as to those administrative complaints.  (Am. Compl. ¶¶ 13–14, 40–42; Answer ¶ 15.)   By not following its own procedure and dismissing the administrative complaint, the City effectively consents to the

14

prospective tenants' position, allowing the tenants to stand in the City's shoes and sue ZG Properties. In effect, the City's acquiescence forces ZG Properties to accept Section 8 (and HAP Contracts) or face ongoing litigation and reputational harm. The City never provided ZG Properties with an opportunity to be heard. Instead, the City flouted its own regulations and failed to conduct any hearing whatsoever. When the City failed to conclude its investigation within the time provided—a decision which remains outstanding today—the City violated ZG Properties' liberty interests without due process.

For these reasons, the Court should grant ZG Properties' motion for judgment on the pleadings on Count 4 and issue a declaratory judgment that the City violated ZG Properties' right to procedural due process.

**E.      By Compelling Section 8 Participation, the City Is Violating ZG Properties' Substantive Due Process Rights (Count 5).**

The City is violating ZG Properties' substantive due process rights because it is coercing ZG Properties into a voluntary federal program. (Am. Compl., Count 5.) The Fourteenth Amendment protects property owners from deprivation of substantive due process. U.S. Const. amend. XIV. Municipalities violate a plaintiff's right to substantive due process when the plaintiff identifies a constitutionally protected property or liberty interest that has been deprived through arbitrary and capricious action. *EJS Props.*, 698 F.3d at 855 (quoting *Braun v. Ann Arbor Charter Twp.*, 519 F.3d 564, 573 (6th Cir. 2008).); *Warren v. City of Athens*, 411 F.3d 697, 707 (6th Cir. 2005) ("A substantive due process violation occurs when arbitrary and capricious government action deprives an individual of a constitutionally protected property interest."). As discussed above, the right to choose who to contract with is a fundamental liberty interest. *See EJS Props.*, 698 F.3d at 859. And a government's action violates that liberty interest where it engages in an "arbitrary or irrational exercise of power." *Paterek v. Vill. of Armada*, 801 F.3d 630, 648 (6th Cir.

15

2015)  (quoting *Warren*, 411 F.3d at 707).  If there is "no rational basis" for the decision, the action is arbitrary and capricious.  *Pearson v. Grand Blanc*, 961 F.2d 1211, 1221 (6th Cir. 1992) (quoting *Stevens v. Hunt*, 646 F.2d 1168, 1170 (6th Cir. 1981)).

Here, the City's application of the Source of Income Provision deprives ZG Properties of its substantive due process rights.  ZG Properties is the owner of the Property and, as the owner, it has the right to determine who it wants to contract with and who it wants to exclude from its property.  (Am. Compl. ¶¶ 7, 17–24.)  Subject to certain exceptions under the law, ZG Properties has the right to exclude individuals from the Property, choose prospective tenants, negotiate the terms of contracts with prospective tenants, and avoid compelled participation in a government housing program with mandated tenants and lease terms.  (Am. Compl. ¶¶ 101–106.)  The City violated ZG Properties' liberty interests by engaging in arbitrary and irrational action, as it has no rational basis for violating federal law.  The City admits that Section 8 is a *voluntary* federal program, yet it *compels* participation in Section 8 and refuses to amend its Housing Code to comply with federal law.  By interpreting the Source of Income Provision to require ZG Properties to accept Section 8 vouchers, the City has deprived ZG Properties of those fundamental property rights through arbitrary, irrational, and illegal action.

For these reasons, the Court should grant ZG Properties' motion for judgment on the pleadings and issue a declaratory judgment that the City has violated ZG Properties' substantive due process rights.

## VI.    CONCLUSION

For the foregoing reasons, ZG Properties respectfully requests that the Court enter judgment on the pleadings on liability for all counts asserted in the Amended Complaint.  ZG

16

Properties expressly preserves its request for damages and attorneys' fees on Counts 4 and 5 under

42 U.S.C. §§ 1983 and 1988.

Respectfully submitted,

VORYS, SATER, SEYMOUR AND PEASE LLP

*/s/Elizabeth S. Alexander*
Elizabeth S. Alexander (0096401), *Trial Attorney*
Henry J. Moseley (0102673)
52 East Gay Street, P.O. Box 1008
Columbus, Ohio 43216-1008
Phone: (614) 464-6400
Fax: (614) 719-4630
esalexander@vorys.com
hjmoseley@vorys.com

Bryan J. Farkas (0072779)
Vorys, Sater, Seymour and Pease LLP
200 Public Square, Suite 1400
Cleveland, OH 44114
Telephone (614) 464-5691
bjfarkas@vorys.com

Laurence Powers, Esq.
Robert G. Friedman, Esq. (0063811)
Rachel E. Cohen, Esq.  (0097050)
Powers Friedman Linn, PLL
25550 Chagrin Boulevard, Suite 400
Cleveland, Ohio 44122
Telephone (216) 514-1180
LPowers@PFL-Law.com

*Counsel for Plaintiff ZG Properties, LLC*

17

## CERTIFICATE OF COMPLIANCE

The undersigned certifies that the foregoing motion is a standard case under Local Rule 16.2(a)(2)(B), and that the memorandum adheres to the page limitations for standard cases set forth in Local Rule 7.1(f).

/s/Elizabeth S. Alexander
Elizabeth S. Alexander

18

**<u>CERTIFICATE OF SERVICE</u>**

The undersigned certifies that the foregoing was served electronically through this Court's electronic service system upon all parties and/or counsel of record on this 22nd day of June, 2026. Notice of this filing is sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt.  Parties may access this filing through the Court's system.

*/s/Elizabeth S. Alexander*
Elizabeth S. Alexander